IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,  )
                                              )  2:11-cr-00189-GEB
              Plaintiff, )
                                              )
           v.                              )  ORDER DENYING MOTION TO
                                              )  <u>SUPPRESS</u>
ROBERTO CEJA SANDOVAL, )
                                              )
              Defendant.        )
_____ )

           Defendant Sandoval moves for suppression of "all evidence derived as a result of the warrantless search of [his] car, including, but not limited to, approximately five pounds of methamphetamine, approximately ten kilograms of cocaine, a Motorola brand cellular phone, indicia, and any other evidence to be developed that was seized as a result of the search." (Mot. 1:25-2:2.) The government opposes the motion.

           Defendant requests an evidentiary hearing on this motion. <u>Id.</u> at 2:6-7. However the disputed factual issues need not be decided in light of the uncontroverted facts which evince the deputies had reasonable suspicion to stop Defendant and probable cause to search his vehicle. Therefore, an evidentiary hearing is unnecessary and Defendant's motion to suppress will be denied. <u>See</u> <u>United States v. Guzman-Baez</u>, No. CR 07-0794-DLJ, 2008 WL 2168414, at *2 (N.D. Cal. May 22, 2008)("An evidentiary hearing is required on a motion to suppress if the court concludes from the moving papers that there are material

contested issues of fact regarding the validity or legality of the search.")(citing United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1086)).

**I. BACKGROUND**

On April 20, 2011, Defendant was driving through Shasta County on Interstate 5. (Dep. Guiducci's Investigation Report ("I.R.") at 3, Ex. 1 to Guiducci Decl. filed in Supp. of Opp'n.) Deputy Nolan Guiducci ("Guiducci") of the Shasta County Sheriff's Department was parked on the side of Interstate 5 and noticed Defendant as he was driving by. Id. Guiducci declares: "[m]y attention was drawn to a green Ford Focus traveling northbound passing my location in the number one lane. The Focus appeared to be traveling faster than the flow of traffic. I estimated the vehicle's speed at approximately 75 mph." Id. Guiducci waited for the traffic to clear and began to follow Defendant. Id. Guiducci declares he "caught up to the vehicle . . . [which] appeared to slow slightly." Id. Guiducci declares he "paced the vehicle at approximately 71 mph in a posted 65 mph zone." Id. Defendant denies that he was speeding. (Sandoval Decl., Ex. B to Mot.)

Guiducci conducted a traffic stop of Defendant along northbound Interstate 5. (I.R. at 3.) Between approximately one and five minutes into the traffic stop, Shasta County Sheriff's Deputy Tom Moon ("Moon") and his canine, Darco, arrived on the scene. Id.; Dep. Moon Supp. Report, Ex. 1 to Moon Decl. in Supp. of Opp'n; Sandoval Decl.) Upon arriving, Moon walked Darco around Defendant's vehicle. (Dep. Moon Supp. Report; Sandoval Decl.) Moon declares Darco "gave a positive alert to the presence of narcotics on the vehicle as he walked [Darco] around it." (Dep. Moon Supp. Report.) Moon avers he informed Guiducci that Darco alerted to the presence of narcotics in the vehicle and then

2

returned Darco to his patrol vehicle. (Moon Decl. ¶ 3.) Concerning Darco's alert, Defendant declares "[t]he dog circled the car two times and didn't scratch or bark[.]" (Sandoval Decl.) After Moon returned Darco to his patrol vehicle, Deputy Chris McQuillan ("McQuillan") arrived on scene. (Guiducci Decl. ¶ 7; Moon Decl. ¶ 5.)

Guiducci declares he asked for Defendant's consent to search the vehicle after he was informed Darco alerted to the presence of narcotics in his vehicle. (Guiducci Decl. ¶ 9.) Guiducci declares Defendant consented to the search. Id. Defendant denies that he consented to the search. (Sandoval Decl.)

Guiducci and McMillin searched Defendant's vehicle. (Guiducci Decl. ¶¶ 11-12.) Two hidden compartments were found in the sidewalls of the vehicle behind each door. (I.R. at 5; Guiducci Decl. ¶ 12.) Both compartments contained narcotics. (I.R. at 5; Guiducci Decl. ¶¶ 12-13.)

### III. LEGAL STANDARD

On a motion to suppress, which challenges the legitimacy of a traffic stop, the government has the "burden of production [to] com[e] forward with specific and articulable facts to support [the officer's] suspicion of [a traffic violation]." United States v. Willis, 431 F.3d 709, 715 n.5 (9th Cir. 2005)(internal quotation marks and citation omitted). Defendants then bear "the burden of proof . . . and as such must 'introduce contrary evidence[.]'" United States v. Morales, No. CR-11-02782-TUC-CKJ (JCG), 2011 WL 5855126, at *5 (D. Ariz. Nov. 22, 2011)(quoting Willis, 431 F.3d at 715 n.5.).

"[T]he government . . . bears the burden of proving that [a] warrantless search of [a] vehicle was conducted pursuant to a 'specifically established exception[] to the warrant requirement.'" United States v. Brunick, 374 Fed. Appx. 714, 715 (9th Cir.

3

2010)(quoting United States v. Hawkins, 249 F.3d 867, 672 (9th Cir. 2001)).

### III. DISCUSSION

Defendant argues the motion to suppress should be granted for the following reasons: Guiducci "did not have reasonable suspicion to stop [him] for speeding because [he] was not driving faster than the speed limit[;]" the officers did not have probable cause to search his vehicle since the "narcotics detector dog, Darco, was neither certified nor reliable[;]" and Defendant's "alleged consent to the search of his vehicle was not free and voluntary because it was coerced[.]" (Mot. 13:9-10, 15:19-22, 20:1-3.)

Defendant's arguments are addressed in turn.

### A. Reasonable Suspicion to Support Traffic Stop

Defendant argues Guiducci did not have reasonable suspicion to stop him for speeding since Guiducci lacked reliable evidence evincing that he exceeded the posted speed limit. Defendant argues he "was not driving faster than the speed limit[,]" Guiducci "did not use a radar gun," and there is "no evidence that the speedometer on [Guiducci's] car was properly calibrated." Id. at 13:9-10, 13:13-14, 13:17-18.

The government counters, "[t]here was more than enough reasonable suspicion for [Guiducci] to have conducted the traffic stop[;] . . . Guiducci observed [Defendant] driving [his vehicle] faster than the flow of traffic[,]" and paced him "traveling 71 mph in a posted 65 mph zone." (Opp'n 5:3-10.) The government further rejoins, "even if [Guiducci's] speedometer provided inaccurate information . . . . [i]t is well-settled that a factually erroneous belief by an officer can support a reasonable suspicion so long as the officer was not aware of the factual error and was reasonable in acting on it." Id. at 6:28-7:4.

4

1          "In the context of investigative traffic stops, the Fourth
2    Amendment requires only that an officer have reasonable suspicion to
3    believe that a traffic violation has occurred[.]" United States v.
4    Venegas, No. 10-56401, 2012 WL 600714, at *1 (9th Cir. Feb. 24, 2012).
5    "'Reasonable suspicion' is a modest evidentiary standard. The standard
6    does not rise to the level required for probable cause, and it falls
7    considerably short of satisfying a preponderance of the evidence
8    standard." United States v. Padilla, No. CR09-658 TUC DCB (CRP), 2010 WL
9    1859988, at *2 (D. Ariz. May 10, 2010)(quoting United States v. Arvizu,
10   534 U.S. 266, 274 (2002)).

11         "Reasonable suspicion is formed by specific, articulable facts
12   which, together with objective and reasonable inferences, form the basis
13   for suspecting that the particular person detained is engaged in
14   criminal activity." United States v. Lopez-Soto, 205 F.3d 1101, 1105
15   (9th Cir. 2000)(internal quotation marks and citation omitted). "The
16   reasonable suspicion analysis takes into account the totality of the
17   circumstances. This process allows officers to draw on their own
18   experience and specialized training to make inferences from and
19   deductions about the cumulative information available to them." United
20   States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006)(internal
21   quotation marks and citations omitted).

22         Further, "[a] mistaken [factual] premise can furnish grounds
23   for a[n investigatory] stop, if the officer[] do[es] not know that it is
24   mistaken and [is] reasonable in acting upon it." United States v.
25   Garcia-Acuna, 175 F.3d 1143, 1147 (9th Cir. 1999)(internal quotation
26   marks and citation omitted). "'[W]hat is generally demanded of the many
27   factual determinations that must regularly be made by agents of the
28   government . . . is not that they always be correct, but that they

                                     5

always be reasonable.'" Lopez-Soto, 205 F.3d at 1106 (quoting Illinois v. Rodriguez, 497 U.S. 177, 185 (1990)).

No dispute has been shown to exist concerning the following facts involved with the traffic stop:

Guiducci paced Defendant's vehicle perceiving that according to the speedometer in his patrol vehicle, Defendant's speed was approximately 71 miles per hour in a posted 65 miles per hour zone (Guiducci Decl. ¶¶ 2-3; I.R. at 3);

"Pacing is a standard technique used by the Shasta County Sheriff's Office to determine the speed of vehicles suspected of driving over the posted speed limit" in which "a deputy positions his patrol vehicle behind the suspect's vehicle and matches the speed of the suspect's vehicle for some short distance[, and] . . . observes his own speed based on his speedometer to gauge the speed of the suspect's vehicle" (Guiducci Decl. ¶ 3); and

It is Guiducci's "understanding" that his vehicle was "regularly maintain[ed]" Id. at ¶ 4.

In light of these undisputed facts, "even if [Guiducci] was mistaken that [Defendant] was in fact speeding, . . . his method of pacing was objectively reasonable. . . . Because [Guiducci] had an objectively reasonable basis for initiating the stop, any factual mistake as to whether [Defendant] was speeding does not diminish the . . . legal basis to make the stop." United States v. Archuleta, No. 11-50018, 2012 WL 695450, at *4 (5th Cir. Mar. 6, 2012). Further, "[t]he fact that [Defendant declares] that he [was not speeding] is irrelevant [since Guiducci] had reasonable suspicion that [he] was speeding." United States v. Nunez, No. 1:10-CR-127, 2011 WL 2357832, at *3 (D. Utah June 9, 2011).

6

**B. Probable Cause to Search Defendant's Vehicle**

Defendant next argues that the narcotics detection dog, Darco, was neither certified nor reliable[; t]herefore, [Guiducci's] search . . . based on Darco's alleged alert . . . violated the Fourth Amendment[.]" (Mot. 15:19-22.) In essence, Defendant challenges Darco's narcotics certifications and argues Darco is unreliable since he "was a novice narcotics detector dog with little experience searching for narcotics in the field." Id. at 16:5-20, 17:3-6, 17:12-25, 18:5-12.

The government counters that "the evidence before the Court demonstrates that Darco was a reliable narcotics detection canine." (Opp'n 11:16-17.) The government further argues the Ninth Circuit does not require a narcotics detection canine to be "certified" to be reliable; nevertheless, "Darco was fully certified, further demonstrating his reliability." Id. at 8:19-9:6.

"Under the automobile exception to the Fourth Amendment's warrant requirement, '[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.'" United States v. Cervantes, --- F.3d ----, 2012 WL 1700840, at *2 (9th Cir. 2012)(quoting California v. Acevedo, 500 U.S. 565, 580 (1991)). "An officer will have probable cause to search if 'there is a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances.'" Id. (quoting Dawson v. City of Seattle, 435 F.3d 1054, 1062 (9th Cir. 2006)).

The Ninth Circuit "ha[s] routinely held that a canine identification or 'alert' of illegal narcotics provides probable cause . . . so long as the dog's reliability is established." Grant v. City of Long Beach, 315 F.3d 1081, 1085-86 (9th Cir. 2002)(citing United States

v Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993) and United States v. Spetz, 721 F.2d 1457, 1464 (9th Cir. 1983)(overruled on other grounds)). Alerts can be passive or aggressive. "'The dog trained to alert aggressively tries to contact the scent source (biting, scratching, penetrating, attempting to retrieve), while the dog that alerts passively does not try to contact the scent source but instead performs trained behavior (sitting, looking at the source, sniffing toward the source, looking at the handler).'" United States v. Johnson, 323 F.3d 566, 568 (7th Cir. 2003)(quoting Sandy Bryson, Police Dog Tactics 257 (2d ed. 2000)).

The following facts concerning Darco's experience as a narcotics dog are undisputed:

Between 2008 and 2010, Darco completed 73 narcotics searches: 20 in 2008, 20 in 2009 and 33 in 2010 (2008 Year End K-9 Report at 3, Ex. M to Mot.; 2009 Year End K-9 Report at 3, Ex. N to Mot.; 2010 Year End K-9 Report at 3, Ex. O to Mot.);

Darco was evaluated on an almost weekly basis for narcotics detection indoors, outdoors and in vehicles, and consistently detected methamphetamine and cocaine (Darco's K-9 Training Logs January 1, 2009 - May 23, 2011, Exs. 2-4 to Moon Decl.);

Darco's certification score sheets and training records do not evidence any false alerts and indicate only a single day of training where Darco failed to locate narcotics (Narcotic Search Certification Score Sheets, Ex. H to Mot.; Darco's K-9 Training Logs January 1, 2009 - May 23, 2011); and

Moon, Darco's handler since 2007, declares that he "do[es] not recall any instance[] where Darco has made a false alert as to the

presence of narcotics either in training[] or in investigations." (Moon Decl. ¶ 10.)

"Based upon [these undisputed facts], the Government has met its burden of proving [Darco's] reliability." United States v. Neatherlin, 66 F. Supp. 2d 1157, 1160-61 (D. Mont. 1999)(stating evidence that the narcotics detection dog trains eight hours every two weeks, is tested and certified annually, and does not alert where no drugs are present "shows, by a preponderance of the evidence, that [the dog] is reliable"); see also Spetz, 721 F.2d at 1464 (stating a "mistake in the affidavit [supporting a search warrant] as to [the narcotics detection dog's] record was unimportant because the difference in figures[, i.e. alerting correctly 56 out of 61 occasions versus 60 out of 66 occasions,] is immaterial and would not have affected the magistrate's judgment of the dog's reliability").

Defendant challenges the validity of Darco's annual certifications; however, he has not shown that a dog must be certified for its alert to supply probable cause for a warantless search. Therefore, any factual disputes concerning the circumstances surrounding Darco's certifications are immaterial to this motion.

Defendant also argues in its reply brief that "there is a contested issue of material fact as to whether or not Darco actually alerted to the presence of narcotics in [Defendant's car, requiring] an evidentiary hearing[.]" (Reply 9:10-13.) However, since this "[a]rgument[] [was] not raised in [Defendant's] opening brief[, it is] waived." Alaska Center for Env't v. United States Forest Serv., 189 F.3d 851, 858 n.4 (9th Cir. 1999); see also Sophanthavong v. Palmateer, 378 F.3d 859, 872 (9th Cir. 2004)("The unfairness of such a tactic is obvious. Opposing counsel is denied the opportunity to point to the

record to show that the new theory lacks legal or factual support."). Moreover, Defendant has not shown that there is a material contested factual dispute on the issue of whether or not Darco alerted. Although Defendant declares that "the dog circled the car two times and didn't scratch or bark[,]" Darco's handler declares that Darco "gave a positive alert to the presence of narcotics on the vehicle as [he] walked him around it[,]" and that he notified Guiducci of the alert. (Moon Supp. Report; Moon Decl. ¶¶ 2-3.) Further, Darco's Narcotic Search Certification Score Sheets evince that he alerts in a "passive," rather than "active" manner. (Narcotic Search Certification Score Sheets.)

**IV. CONCLUSION**

For the stated reasons, Guiducci had both reasonable suspicion to stop Defendant and probable cause to search his vehicle. Therefore, Defendant's motion to suppress is denied and the issue of whether Defendant consented to the search need not be reached.

The hearing scheduled to commence at 9:00 a.m. on May 25, 2012, on Defendant's suppression motion is converted to a status hearing.

Dated: May 24, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge